IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIANA GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-383-L |
| | § | |
| SOUTHWESTERN BELL YELLOW | § | |
| PAGES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Southwestern Bell Yellow Pages, Inc.'s Motion for Summary

Judgment, filed March 6, 2006. After careful consideration of the motion, response, briefs, reply,

evidence, record and applicable law, the court **grants in part** and **denies in part** Defendant

Southwestern Bell Yellow Pages, Inc.'s Motion for Summary Judgment.

**I.      Factual and Procedural Background**

This case arises out of the employment of Plaintiff Diana Gonzalez ("Plaintiff" or

"Gonzalez") by Defendant Southwestern Bell Yellow Pages, Inc. ("SWBYP" or "Defendant").

Plaintiff filed this case on February 25, 2005, alleging discrimination based on sex and national

origin, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, *et seq.* ("Title VII"), and age discrimination in violation of the Age Discrimination in

Employment Act, 29 U.S.C. § 623(a) ("ADEA").  Plaintiff also alleges discrimination based on sex,

national origin, and age, as well as unlawful retaliation, in violation of the Texas Commission on

Human Rights Act, Tex. Lab. Code Ann. § 21.001 *et seq.* ("TCHRA").[1]  Specifically, Plaintiff contends that SWBYP discriminated against her based on age, sex and national origin when it reassigned certain telephone directory accounts of a departing account representative in an allegedly discriminatory fashion, and retaliated against her for complaining about the alleged unlawful acts to the Equal Employment Opportunity Commission.[2]  Defendant has filed a motion for summary judgment, contending that no genuine issue of material fact exists with respect to any of Plaintiff's asserted claims, and that it is therefore entitled to judgment as a matter of law.  Defendant has also filed objections to certain evidence presented by Plaintiff.  The court now sets forth the facts upon which it relies to resolve the summary judgment motion.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

Plaintiff began her employment with SWBYP in 1980, and has since been employed in the Dallas, Texas sales office.  In March 2002, general manager Bret Shugarts ("Shugarts") offered Plaintiff a promotion from account representative to Senior Account Representative ("SAR"), which she accepted.  The SAR position, implemented in December 2001, is an "outside sales position that

---

[1]"One of the primary goals of the [TCHRA] is to coordinate state law with federal law in the area of employment discrimination." *Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000) (quoting Tex. Lab. Code § 21.001(1)-(2)).  In light of the Legislature's express purpose, Texas courts "look to analogous federal precedent for guidance when interpreting the [TCHRA]." *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006)(citation omitted). *See also NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999) (The TCHRA "is modeled after federal civil rights law" and an express purpose of it is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.") (quoting Tex. Lab. Code § 21.001(1)).  As such, the evidentiary framework for stating a claim under the TCHRA is the same as that employed under Title VII and the ADEA. *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex.App.–Houston [1st Dist.] 1993, writ denied); *Martin v. Kroger Co.*, 65 F. Supp.2d 516, 530 (S.D. Tex. 1999). This court therefore applies the same analysis on the TCHRA claims as the Title VII and ADEA claims.

[2]In her Complaint, Plaintiff also alleged that SWBYP discriminated against her when it demoted her in September 2004.  In her Response to Defendant's Motion for Summary Judgment, Plaintiff states that she "hereby withdraws her demotion claim." Pl. Resp. at 13.  Accordingly, this claim is no longer before the court, and the court will not consider it.

**Memorandum Opinion and Order - Page 2**

requires face-to-face contact with SWBYP's most significant, high-dollar, long-term customers." Def. App. at 143.  SARs are the most highly compensated sales personnel at SWBYP, and are responsible for, among other things, "renewing and increasing the high-dollar advertising programs purchased by these long-term customers."  *Id.* at 143-44.  To that end, SARs work on a particular telephone directory for a specific geographical area during a specific time period, known as a "canvass."  *Id.* at 145.  Each canvass has a close date.  *Id.*  Plaintiff reported directly to Shugarts until early 2003, when he was replaced by Jackie Payne ("Payne").  SWBYP promoted a local sales manager, Robert Frazer ("Frazer"), to the position of Area Sales Manager – Senior Accounts, at SWBYP's Dallas sales office.  Frazer directly supervised the SARs, including Plaintiff.  Frazer reported to Payne.

*Reassignment of Porter Pierce's Suburban Accounts for Dallas 2002 Directory*

In early 2003, SAR Porter Pierce left the position of SAR, leaving behind his accounts which had to be reassigned.  In the Dallas sales office, the remaining SARs were, in order of seniority, Plaintiff, Graciela DelaRosa ("DelaRosa"), Carolyn Johnson ("Johnson"), Daniel Kirby ("Kirby") and Charlie Bruce ("Bruce").  Barbara J. Wright ("Wright"), an assignment supervisor for SWBYP, was in charge of reassignment.  She testified at her deposition that in February or March 2003, Frazer provided her a handwritten list of account assignments, under which Pierce's suburban accounts were to be reassigned in the following order: Kirby, Bruce, Gonzalez, DelaRosa, and Johnson.  Wright further testified that she manually reassigned Pierce's suburban accounts based on Frazer's list.  On March 20, 2003, DelaRosa sent an e-mail to Payne complaining about Frazer's method of reassigning Pierce's suburban accounts.  Plaintiff accused Frazer of ignoring a seniority

system in assigning Pierce's suburban accounts.[3]  Plaintiff, DelaRosa and Johnson collectively filed a union grievance.

*Reassignment of Porter Pierce's Accounts for Dallas 2003 Directory*

In late 2003, certain of Porter Pierce's accounts for the Dallas 2003 Directory were reassigned to other SARs pursuant to a mechanized process.  At the time, there were five SARs in the Dallas sales office.  Wright testified in her deposition, and exhibits to her deposition show, that the accounts were redistributed evenly to each of the SARs through a computer-generated assignment.  *See* Def. App. at 185, 194-98.  Plaintiff did not receive the Allen Rad Law Firm account during the reassignment.  The Allen Rad Law Firm account was assigned to Charlie Bruce, a white male with the least seniority of the SARs.  Failure to receive the Allen Rad Law Firm account caused Plaintiff to lose sales and commissions.

*Reassignment of the Adrian Crane Account*

Plaintiff was assigned the Adrian Crane account.  The customer (Adrian Crane) complained about Plaintiff and wrote SWBYP a letter dated January 7, 2004, in which he requested his account

---

[3]Defendant has objected to the statement in the Affidavit of Diana Gonzalez that SWBYP has "[l]ong standing company policies" that "require managers to reassign accounts from representatives leaving the company to remaining representatives based on seniority." Def. Obj. & Reply at 2.  Defendant contends, among other things, that this statement is inadmissible since Plaintiff testified at her deposition that there was no such policy or past practice *with respect to SARs* as to how reassignments would be handled.  *See* Def. App. at 37-38. To the extent Gonzalez's Affidavit contains statements that contradict her deposition testimony and no adequate reason was given for the contradiction, such portions of Plaintiff's Affidavit will not be given weight. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir.2000), *cert. denied*, 531 U.S. 1073 (2001) ("If a party who has been examined at length in deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *Roberts v. National Autotech, Inc.*, 192 F.Supp.2d 672, 680 n.33 (N.D. Tex. 2002) (Lynn, J) (striking portions of declarations contradicting prior deposition testimony); *see also Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir.1998) (bare allegations of fact, ultimate or conclusory facts, and legal conclusions cannot, by themselves, defend against summary dismissal). The court has reviewed Plaintiff's deposition testimony and her Affidavit ¶ 3 and finds the testimony conflicting. Plaintiff has offered no explanation for this conflict.  Accordingly, the court **sustains** Defendant's Objections to ¶ 3 of Gonzalez's Affidavit.

be reassigned to a representative other than Plaintiff.  *See* Def. App. 144-145, 151 (Decl. of Robert

Frazer and Ex. B thereto) ("Dear Friends, I respectfully request that my account be reassigned from

Dianna [sic] Gonzalez to another representative.  Quite frankly, we just aren't clicking.  Sincerely,

Adrian Crane").  On January 30, 2004, Plaintiff filed her First Charge with the EEOC.  Two months

later, Frazer reassigned the Adrian Crane account to another SAR.

*Assignment of Staggs Plumbing and Hunt Bonneau Law Firm Accounts during "Rework"*

A period of "rework" ensued on the Dallas 2003 Directory.  A "rework" is a period of time

during a canvass when representatives attempt to persuade customers who have decreased or

canceled existing advertising to increase or renew that advertising.  Def. App. at 31. Neither Bruce

nor Kirby participated in the Dallas "rework" because they did not have the time.  Plaintiff,

DelaRosa and Johnson were on a rotating "rework" list.  As such, the Staggs Plumbing account

should have been assigned to either Plaintiff, DelaRosa or Johnson.  Plaintiff testified at deposition

that she did not know that the Staggs Plumbing account should have come to her in particular, but

it should have gone to one of the three women on the "rework" list, depending on whom was next

in the rotation.  *Id.* at 23.  Ultimately, Kirby  was assigned the "rework" on the Stagg's Plumbing

account.  At a crew meeting, Frazer orally assigned Plaintiff the "rework" on all of Marilyn Savage's

accounts, which included the Hunt Bonneau Law Firm account.  When Plaintiff received the written

list of the account to "rework," the Hunt Bonneau Law Firm account was not on the list.  Ultimately,

Bruce was assigned the "rework" on the Hunt Bonneau Law Firm account.

In September 2004, Plaintiff was demoted from SAR to account representative.  After her

demotion, Plaintiff "achieved the status of number one sales account representative in the Dallas

sales office by leading all sales representatives in the Dallas 2006 directory."  Pl. App. at 48.

**Memorandum Opinion and Order - Page 5**

*Charges Filed with Equal Employment Opportunity Commission*

On January 30, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining that she was being discriminated against based on her age and sex by being "denied equal assignments on accounts". Def. App. at 105 ("First Charge"). Plaintiff was 43 years old at the time she filed her First Charge. On April 20, 2004, Plaintiff filed a second Charge of Discrimination with the EEOC, complaining that she was being retaliated against for filing her First Charge. *Id.* at 107 ("Second Charge"). In her Second Charge, she stated that she had not received paychecks for three pay dates, that the "Adrian Crane" account had been removed and reassigned to a co-worker, that her disability request had been denied, and that she had received "a threatening letter from SBC." *Id.* On June 1, 2004, Plaintiff filed her third Charge of Discrimination with the EEOC, complaining of discrimination based on age and sex, and retaliation for filing her First and Second Charge. *Id.* at 109 ("Third Charge"). In her Third Charge she alleged that her Fort Worth accounts were "pulled and reassigned to a male and a female representative[]." *Id.* On July 1, 2004, Plaintiff filed her fourth Charge of Discrimination with the EEOC, alleging she had been retaliated against for filing her previous EEOC Charges. *Id.* at 100 ("Fourth Charge"). In support, she alleged that:

> I am now on a continuous basis being harassed and treated differently as an employee by Mr. Robert Frazer, Manager/Sales. . . . He has recently yelled at me by using profanity, instead of dealing with me on a professional level. My work accounts are being scrutinized. I am also required to turn in a work document to show what I am doing on a weekly basis. I now have to attend mandatory meetings on Monday. There was a recent incident where I was not allowed to leave Mr. Frazer's office and held as a prisoner, and not until I got sick to my stomach was I able to leave his office. I have not been given my parking pass. My work inquiries are not being responded to, either verbal or written. I am presently given assignments that do not allow me to have the [same] income potential as my counterparts.

*Id.* at 110.  On September 27, 2004, Plaintiff filed her fifth Charge of Discrimination with the EEOC, alleging discrimination based on sex, age and national origin, as well as retaliation, in connection with her demotion.  *Id.* at 118 ("Fifth Charge").

## II.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita,* 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

## III.   Analysis

### A.   Timeliness of Claims Relating to Reassignment of Pierce's Suburban Accounts

Defendant contends that any claims by Plaintiff relating to the reassignment of Pierce's suburban accounts for the 2002 Dallas Directory are time-barred, since they are based on events which occurred more than 300 days before Plaintiff's First Charge. As Plaintiff filed her First Charge on January 30, 2004, Defendant urges that any claims based on events occurring before April 5, 2003 (more than 300 days before her filing) are time-barred. Additionally, Defendant contends

that these claims are not before the court because Plaintiff failed to exhaust her administrative remedies.  *See* Def. Summ. Judg. Brief at 15 n.7; Def. Reply Brief at 7.

Administrative review is normally first required before judicial review of a discrimination complaint.  *See Messer v. Meno*, 130 F.3d 130 (5th Cir. 1997).  A Title VII plaintiff must file a charge of discrimination with the EEOC no more than three hundred days after learning of an adverse employment decision in a referral state, such as Texas.  *Id.* n.2.  Acts occurring more than 300 days prior to filing an EEOC charge are time-barred.

In her Response, Plaintiff acknowledges that Pierce's suburban accounts for the 2002 Dallas Directory were reassigned in early 2003.  *See* Pl. Resp. at 7.  Plaintiff acknowledges in her deposition that the reassignment of Pierce's suburban accounts was not encompassed by her First Charge  because that reassignment occurred *prior to* April 5, 2003.  Def. App. 17, 102-03.  Wright testified in her deposition that Pierce's suburban accounts were reassigned in February or March 2003.  In light of this undisputed evidence that reassignment of Pierce's suburban accounts occurred more than 300 days before Plaintiff's First Charge, and given Plaintiff's failure in her Response to contest Defendant's argument, the court determines that any claims relating to the reassignment of Pierce's suburban accounts for the 2002 Dallas Directory are time-barred and may not be considered by the  court.

### B.    National Origin Discrimination

In her Fifth Charge, Plaintiff complained of national origin discrimination in connection with her demotion.  *See* Def. App. at 118.  She did not complain of national origin discrimination in any of her previous four charges.  In her Response, Plaintiff has informed the court that she is no longer pursuing a claim based upon her demotion, which was the basis for her Fifth Charge.  Defendant

argues that under these circumstances, Plaintiff no longer has a national origin discrimination claim before the court.   The court agrees.   As Plaintiff has withdrawn claims relating to her demotion, which was the only act tied to her national origin claim, the court determines that Plaintiff's national origin claim is no longer before it, and should be dismissed.

### C.       Age and Sex Discrimination

Plaintiff contends that SWBYP discriminated against her based on her age (over forty) and sex (female) in the reassignment of Porter Pierce's accounts for Dallas 2003 Directory,[4] as well as the assignment of Staggs Plumbing and Hunt Bonneau Law Firm Accounts during the "rework" for the 2003 directory, in violation of the ADEA and Title VII.[5]   A plaintiff can prove a claim of intentional discrimination by direct evidence, circumstantial evidence, or both.   *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).   Plaintiff has not presented direct evidence of age or sex discrimination.[6]   Since she has presented no direct evidence of age or sex discrimination, she must rely on circumstantial evidence.

---

[4]Plaintiff also alleges discrimination based on age and sex in connection with the reassignment of Pierce's suburban accounts for the 2002 Dallas Directory.   As already stated, *see supra* at 8-9, any claims relating to the reassignment of these accounts are time-barred and may not be considered by the court.

[5]The ADEA prohibits an employer from discriminating against any individual in hiring or discharge, or with respect to her compensation, terms, conditions, or privileges of employment, on the basis of age. 29 U.S.C. § 623(a)(1). Title VII of the Civil Right Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

[6]"Direct evidence" is "evidence which, if believed, proves the fact [in question] without inference or presumption." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). If an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct. *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003). Direct evidence includes any statement or document which shows on its face that an improper criterion served as *a* basis, though not necessarily *the* basis, for the adverse employment action. *Fabela*, 329 F.3d at 415. Having examined the record, the court finds that Plaintiff has failed to submit any direct evidence of age discrimination.

The court must first determine the applicable standard of proof it will use to evaluate her claims; namely, whether the claims will be analyzed pursuant to the "pretext" method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the "mixed-motive" circumstantial evidence analysis, called the "modified *McDonnell Douglas*" approach, set forth in *Desert Palace* and subsequent cases. *See Desert Palace*, 539 U.S. at 101-02; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).[7] Because Plaintiff is not contending that Defendant's articulated legitimate, nondiscriminatory reason for its allegedly unlawful conduct, while true, is only one of the reasons for its conduct, and another motivating factor is one of Plaintiff's protected characteristics (her sex, age or national origin), and because both parties apply the *McDonnell Douglas* burden-shifting framework in their legal briefs, the court will analyze Plaintiff's claims pursuant to the *McDonnell Douglas* burden-shifting framework.

The *McDonnell Douglas* framework requires a plaintiff to first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If a plaintiff establishes a *prima facie* case, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *Reeves*, 530 U.S. at 142; *McDonnell Douglas*, 411 U.S. at 802. If such a showing is made, the presumption

---

[7]The court notes that *Desert Palace* and the "modified *McDonnell Douglas*" approach do not alter the court's analysis in a pure pretext case, such as this one. *Keelan*, 407 F.3d at 340 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 & n.3 (2003)). For a plaintiff to survive summary judgment under the "modified *McDonnell Douglas*" approach, once the burden returns to her, she must offer sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005); *Rachid*, 376 F.3d at 312 (internal citations and quotations omitted).

disappears, and the burden shifts back to the plaintiff, who survives summary judgment if he is able to demonstrate that the articulated reason was merely a pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

### 1.        Reassignment of Porter Pierce's accounts for Dallas 2003 Directory

SWBYP argues that it is entitled to summary judgment on Plaintiff's ADEA claim and Title VII sex discrimination claim because she has failed to establish a *prima facie* case of age or sex discrimination, and, alternatively, because Plaintiff has failed to raise a genuine issue of material fact that SWBYP's articulated legitimate, nondiscriminatory reason was a pretext for discrimination. As set forth directly below, because the court determines that Plaintiff has failed to raise a genuine issue of material fact that SWBYP's articulated legitimate, nondiscriminatory reason was a pretext for intentional age or sex discrimination, the court assumes, without finding, that Plaintiff has met her burden of making out a *prima facie* case of age and sex discrimination.

Once a plaintiff's *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment actions. *McDonnell Douglas,* 411 U.S. at 802-04.  With regard to Plaintiff's allegations that she was discriminated against based on her age and sex during the reassignment of Porter Pierce's accounts for the 2003 Dallas Directory, specifically with regard to the Allen Rad law Firm account, the court determines that SWBYP has proffered a  legitimate, nondiscriminatory reason.  In late 2003, certain of Porter Pierce's accounts for the Dallas 2003 Directory were reassigned to other SARs pursuant to a mechanized process.  At the time, there were five SARs in the Dallas sales office, namely, Plaintiff, DelaRosa, Johnson,

Kirby and Bruce. Wright testified in her deposition, and exhibits to her deposition show, that the accounts were redistributed evenly to each of the SARs through a computer-generated assignment. *See* Def. App. at 185, 194-98. In sum, Defendant's legitimate, nondiscriminatory reason that Plaintiff did not receive the Allen Rad Law Firm account during the reassignment was that the assignments were the result of a computer mechanized assignment process, and not intentional discrimination. As SWBYP has thus met its burden of articulating a legitimate, nondiscriminatory reason for the manner in which Porter Pierce's 2003 Directory accounts were reassigned, the burden shifts to Plaintiff to demonstrate that Defendant's articulated reason is a pretext for intentional discrimination.

In order to defeat Defendant's Motion for Summary Judgment, Plaintiff must produce sufficient evidence to permit a jury to disbelieve that Defendant's proffered reason was its true motivation. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.* at 579-80 (quoting *Reeves*, 530 U.S. at 147) (internal citation omitted); *Sandstad*, 309 F.3d at 897 ( A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.").

In this case, however, Plaintiff has failed to submit any evidence to create a genuine issue of material fact that Defendant's articulated legitimate, nondiscriminatory reason is unworthy of credence or a pretext for intentional discrimination based on age or sex. Plaintiff asserts in summary fashion in her Response that she "has introduced the testimony of competent witnesses and

documentation which show that Defendant's articulated defense in quite simply untrue." Pl. Resp. at 16. As Defendant correctly points out, Plaintiff cites no evidence to support this assertion. Def. Reply at 11. Other than her subjective belief that she was not assigned the Allen Rad account or any other of Pierce's accounts due to her age and gender, and not because of a computer-generated mechanized assignment process, she has submitted nothing to support this belief. "[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." *Lawrence v. University of Texas Med. Branch at Galveston*, 163 F.3d 309, 313 and n.21 (5th Cir.1999) (quoting *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983) (subsequent history omitted)); *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) ("[U]nsubstantiated or conclusory assertion that a fact issue exists will not suffice" to defeat a properly supported motion for summary judgment.); *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.") (citation). *Cf. Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir.), *cert. denied*, 531 U.S. 816 ( 2000) ("[A] plaintiff's subjective perception that a demotion has occurred is not enough to constitute an adverse employment action."). Because Plaintiff has failed to point to evidence which creates a genuine issue of material fact that Defendant intentionally discriminated against her on account of her age or sex, the court determines that Defendant is entitled to judgment as a matter of law on her claims of age and sex discrimination relating to the reassignment of Pierce's 2003 Directory accounts.

### 2.        The Staggs Plumbing and Hunt Bonneau Law Firm Accounts

SWBYP argues that it is entitled to summary judgment on Plaintiff's ADEA claim and Title VII sex discrimination claim relating to the assignment of the "rework" of the Staggs Plumbing and Hunt Bonneau Law Firm Accounts because she has failed to establish a *prima facie* case of age or sex discrimination, and, alternatively, because she has failed to raise a genuine issue of material fact that SWBYP's articulated legitimate, nondiscriminatory reason was a pretext for discrimination.

To establish her *prima facie* case, Plaintiff must show that (1) she belongs to a protected class of persons; (2) she suffered an adverse employment action; and (3) employees outside her protected class were treated differently under nearly identical circumstances. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). With regard to Plaintiff's claims relating to the Staggs Plumbing and Hunt Bonneau Law Firm accounts, Defendant contends that Plaintiff has failed to raise an issue of material fact that she suffered an adverse employment action. In support, Defendant relies on this court's decision in *Wayne v. The Dallas Morning News*, 78 F.Supp.2d 571, 584 (N.D. Tex. 1999) (Lindsay, J.), where the court held that assigning, or not assigning, certain accounts to an employee does not rise to the level of an "ultimate employment action," and thus fails to satisfy the "adverse employment action" element of a *prima facie* case. *See id.* (citing *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705-07 (5th Cir.), *cert. denied,* 118 S.Ct. 336 (1997)) ("To satisfy the 'adverse employment action' prong of her prima facie case, Wayne must show that the *[Dallas] Morning News* took 'ultimate employment action' against her."). In *Wayne*, the court further held that "The *[Dallas] Morning News*' actions with respect to account assignments could rise to the level of an ultimate employment decision if the assignment of accounts affected the compensation paid to its sales representatives." *Id.* (citing *Mattern,* 104 F.3d at 707). In her

Response, Plaintiff argues that Kirby and Bruce, respectively, each netted $10,000 in being assigned

the "rework" of the Staggs Plumbing account and Hunt Bonneau Law Firm account.  She contends

that Defendant's actions in this regard cost her $10,000 in commissions as to each account.   In

support, Plaintiff cites to her Appendix at pages 7-24 (portions of Plaintiff's Deposition Transcript)

and to her Appendix at pages 54-66 (portions of Johnson's deposition transcript).   The court has

carefully examined these portions of the record and finds no support for the assertion in her

Response that Kirby and Bruce, respectively, each netted $10,000 in being assigned the "rework"

of the the Staggs Plumbing account and Hunt Bonneau Law Firm account, or that Defendant's

actions in this regard cost her $10,000 in commissions as to each account.  Although the court has

no duty to search the record for triable issues, and need rely only on those portions of submitted

documents to which the nonmoving party directs its attention, *see Ragas*, 136 F.3d at 458,  the court

has nevertheless carefully combed through the entire record and located no evidentiary support for

Plaintiff's contention in her Response that the assignment of the Staggs Plumbing account and Hunt

Bonneau Law Firm account to Kirby and Bruce, respectively, affected her compensation.  Because

Plaintiff has failed to establish that she suffered an adverse employment action, Defendant is entitled

to judgment as a matter of law on Plaintiff's ADEA and Title VII sex discrimination claims relating

to the assignment of the "rework" of the Staggs Plumbing and Hunt Bonneau Law Firm Accounts.

### D.     Retaliation

Defendant has moved for summary judgment on Plaintiff's claims that SWBYP retaliated

against her for filing charges of discrimination with the EEOC.  In her Response, Plaintiff abandons

the majority of her retaliation claims, including her retaliatory demotion claim.  Based on her

Response, her only retaliation claim is that SWBYP unlawfully retaliated against her when it

**Memorandum Opinion and Order - Page 16**

reassigned the Adrian Crane account to another SAR two months after she filed her First Charge. *See generally* Pl. Resp. at 13, 16-18.

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.  *See Fabela v. Socorro Indep. Sch.* Dist., 329 F.3d 409, 414 (5th Cir. 2003); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).  The establishment of a *prima facie* case gives rise to an inference of retaliation. *Id.* This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate nonretaliatory reason for the challenged employment action. *Id.*  Once the defendant asserts such a reason, the inference of discrimination raised by the *prima facie* case drops from the case. At this point, summary judgment is appropriate unless the plaintiff can raise a genuine issue of fact that the defendant's rationale is pretextual. *McDonnell Douglas*, 411 U.S. at 801-803.

### 1. Plaintiff's *Prima Facie* Case

Defendant does not dispute that by filing her First Charge with the EEOC on January 30, 2004, Plaintiff engaged in an activity protected by Title VII, thus satisfying the first element of her

*prima facie* case.  Defendant contends, however, that Plaintiff has failed to satisfy the second and third elements of her *prima facie* case.

As to the second element, Defendant contends Plaintiff has failed to raise an issue of material fact that she suffered an adverse employment action.  *See* Def. Mot. at 28 (citing *Mattern*, 104 F.3d at 705).  In support, Defendant relies on Fifth Circuit case law prior to the United States Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2412-13 (2006).  In *Burlington Northern,* the Supreme Court rejected the approach taken by several circuits, including the Fifth Circuit, that required plaintiffs to demonstrate an "ultimate employment decision," such as hiring, granting leave, discharging, promoting, and compensating, to satisfy the "adverse employment action" element of the retaliation claim.  *See, e.g., Mattern*, 104 F.3d at 707. The Supreme Court held that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."    Because the discrimination and retaliation provisions "are not coterminous," the Court concluded that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 126 S.Ct. at 2414. Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415.  In evaluating whether actions are materially adverse, the court further stated: we must remain mindful that "it is important to separate significant from trivial harms" because "[a]n employee's decision to report discriminatory behavior cannot immunize that

employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*[8]    The removal of the Adrian Crane account cannot be characterized as a "petty slight" or "minor annoyance[]" under *Burlington Northern*'s "material adversity" standard. Rather, the court determines that, viewing the facts in the light most favorable to the nonmoving party, a reasonable employee would have found the removal of one of her primary high-end accounts in the middle of a canvass "materially adverse" in that the removal "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington Northern*, 126 S.Ct. at 2415. *Contrast DeHart v. Baker Hughes Oilfield Operations*, 2007 WL 126081, at *3 (5th Cir. Jan. 19, 2007) (issuance of written warning allegedly for insubordination, for being argumentative and for excessive absenteeism would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination."). Accordingly, the court determines that Plaintiff has satisfied the second element of her *prima facie* case.

As to the third element, Defendant contends Plaintiff has failed to raise an issue of material fact that there was a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and the adverse employment action. Plaintiff filed her First Charge with the EEOC on January 30, 2004. Two months later, Defendants reassigned the Adrian Crane account mid-canvass from Plaintiff to DelaRosa. It is true that the "mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). Consideration

---

[8]The Supreme Court issued the *Burlington Northern* opinion on June 22, 2006, after the parties had submitted their briefs in this case. Neither party thereafter requested further briefing in light of the intervening decision by the Court. Accordingly, it is the job of this court to analyze Plaintiff's retaliation claims under *Burlington Northern*.

of the time lapse is something for the court to consider but is not itself determinative of retaliation. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).  Close timing between the protected activity and the adverse employment action may provide a causal link.  *Swanson*, 110 F.3d at 1188. Conclusions drawn from a lack of suspicious timing are less compelling than those drawn from the existence of suspicious timing.  *Fabela*, 329 F.3d at 418 n.9. An inference of causation has been allowed for summary judgment purposes where up to four months have elapsed.  *See Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

In addition to the close temporal proximity between the filing of her First Charge and the removal and reassignment of her Adrian Cran account (two months), the evidence shows that Plaintiff has been a loyal employee SWBYP for over twenty-six years (at the time the parties filed their briefs), and rose in the ranks to the position of SAR, the most highly compensated nonmanagerial position in the company.  Given her record and the close temporal proximity between the filing of her First Charge and the removal of the Adrian Crane accounts, the court determines that Plaintiff has raised a genuine issue of material fact regarding the third element of her *prima facie* case.  *See generally Shirley*, 970 F.2d at 44 (causal link existed despite fourteen month lapse between protected activity and adverse employment action where employee had worked nine years at company without reprimand until she filed EEOC charge).

### 2.     SWBYP's Legitimate, Nonretaliatory Reason

Having determined that Plaintiff has raised a genuine issue of material fact as to each element of her prima facie case, the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason for removing the Adrian Crane account.  The court determines that SWBYP has proffered a legitimate, nonretaliatory reason for removing the Adrian Crane account, namely,

**Memorandum Opinion and Order - Page 20**

the customer (Adrian Crane) complained about Plaintiff and wrote SWBYP a letter dated January 7, 2004, in which he specifically requested his account be reassigned to a representative other than Plaintiff. *See* Def. App. 144-145, 151 (Decl. of Robert Frazer and Ex. B thereto) ("Dear Friends, I respectfully request that my account be reassigned from Dianna [sic] Gonzalez to another representative. Quite frankly, we just aren't clicking. Sincerely, Adrian Crane").

### 3.     Pretext Analysis

Because the employer has produced evidence of a legitimate, nonretaliatory reason for its decision, the *McDonnell Douglas* framework drops from the case. *See Evans,* 246 F.3d at 354; *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996). At this stage, "the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff." *Long,* 88 F.3d at 305. To defeat summary judgment, Gonzalez must raise a genuine issue of material fact that the adverse employment action would not have occurred "but for" the protected activity. *See Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir. 2001); *Long,* 88 F.3d at 308. A plaintiff may establish unlawful retaliation indirectly by showing that the legitimate, nonretaliatory justification offered by the defendant is pretextual. *See Reeves,* 530 U.S. at 188 (explaining "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's proffered explanation is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

Defendant contends that Plaintiff has "absolutely no evidence that [its] reassignment of this account on this basis was pretextual." Def. Brief at 36. In response, Plaintiff contends that she has "submitted competent evidence to show that in such cases, the Defendant would never remove the account during the current sales canvas, but would simply block the reassignment to the same account representative during the next year's canvas." Resp. at 17. Plaintiff is referring to evidence

cited earlier in her brief in support of her contention that in taking away the Adrian Crane account, "Payne and Frazier departed from defendant's longstanding practice of reassigning accounts to new representatives when the customer requests a new representative, *not for the current sales canvas but the following sales canvass*[.]" *Id.* at 12 (original emphasis) (citing Plaintiff's Appendix at 97-98, Kohls Dep. 34/1-12, Ex. 11). Exhibit 11 is a portion of a deposition transcript of Sandi Kohls, taken in a lawsuit titled *Lindie Lawrence v. Southwestern Bell Yellow Pages*. In that action, Gonzalez's attorney represented the plaintiff and SWBYP's attorneys represented the company. Additionally, in her Affidavit submitted along with her Response, Plaintiff stated, "I have personal knowledge that my employer has a long-standing practice of reassigning an account only for the next directory canvass, if the customer requests a new representative." Pl. App. at 47.

Defendant has objected to both the deposition testimony of Sandi Kohls and Plaintiff's affidavit testimony. Plaintiff has not filed any response to Defendant's objections; nevertheless, the court has carefully considered the objections and determines that they should be overruled. With regard to Sandi Kohls's deposition testimony, Defendant contends that a deposition taken in another case is inadmissible hearsay and incompetent summary judgment evidence. *See* Def. Obj. & Reply at 3-4. It is apparent from the deposition transcript itself that Sandi Kohls was testifying on behalf of SWBYP. *See* Pl. App. at 97-98. As such, her statement that following a customer complaint a reassignment would occur during the canvass for the following year, rather than the current canvass, is not hearsay, but is an admission by a party-opponent under Fed. R. Evid. 801(d)(2). As to Plaintiff's affidavit testimony that she has personal knowledge of this policy of reassignment, Defendant objects that Plaintiff has not provided any evidence of the facts or circumstances, if any, on which her statements are based. *See* Def. Obj. & Reply at 2-3. Defendant further objects because

"Plaintiff does not refer to even one specific example where she actually observed [the policy or practice] being followed." *Id.*[9]   As stated by the Fifth Circuit, "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Joseph James Thomas, Jr. v. Atmos Energy Corp.*, No. 06-30514, slip op. at 9 (5th Cir. March 21, 2007) (citation omitted).  The Gonzalez Affidavit, read as a whole, contains adequate factual support for her statement.  She states that she has been employed at SWBYP for over twenty-six years.  Aff. ¶ 1 (Def. App. at 46).  As such, she is likely familiar with the procedures at issue.  Accordingly, the court **overrules** Defendant's objections to these portions of Plaintiff's summary judgment record.[10]

Viewing the evidence in the light most favorable to the nonmoving party, the court determines that Plaintiff, in addition to satisfying all elements of her *prima facie* case, has raised a genuine issue of material fact as to whether SWBYP's proffered reason for removing the Adrian Crane account (the customer's request to be assigned a new representative), was false or unworthy of credence.  Given the evidence presented that  Defendant would not remove the account during the current sales canvas, but would simply block the reassignment to the same account representative during the next year's canvas, a reasonable jury could conclude that Defendant's proffered legitimate, nonretaliatory reason for removing the Adrian Crane account was false or unworthy of credence.  As such, Defendant's motion for summary judgment as to Plaintiff's retaliation claim

---

[9]In support, Defendant cites to a case from the Ninth Circuit and a case from the Second Circuit. Decisions from these circuits are not binding on this court.  Moreover, the court has reviewed the decisions cited by Defendant and determined that they arose under distinct factual settings from this case.

[10]The court acknowledges that the admissibility of Plaintiff's evidence pertaining to SWBYP's alleged practice of reassigning an account only for the next directory canvass if the customer requests a new representative is a close call. The court determines, however, that the better practice, viewing the evidence in the light most favorable to Plaintiff, is to allow the evidence.  At trial, should the evidence on the claim be less than sufficient to submit it to the jury, SWBYP may, of course, move for directed verdict under Fed. R. Civ. P. 50.

should be denied.  *See generally Laxton*, 333 F.3d at 579 (Plaintiff must produce sufficient evidence to permit a jury to disbelieve that Defendant's proffered reason was its true motivation.); *id.* at 579-80 (quoting *Reeves*, 530 U.S. at 147) (internal citation omitted) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."); *Sandstad*, 309 F.3d at 897 ( A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.").

## IV.    Defendant's Objections to Plaintiff's Summary Judgment Evidence

Defendant has filed various objections to Plaintiff's summary judgment evidence.  Plaintiff has not filed a response to Defendant's evidentiary objections.  The court previously set forth the evidentiary standard upon which it relied in determining Defendant's Motion for Summary Judgment.  The court did not consider any evidence that did not meet this standard.  In other words, evidence that did not fall within this standard was not considered and played no role in this decision.  Moreover, the same decision would have been reached even if the court had considered the evidence.  Accordingly, other than the evidentiary objections explicitly sustained or overruled by the court in this memorandum opinion and order, *see supra*, the court **overrules** Defendant's remaining evidentiary objections as moot.

## V.    Conclusion

For the reasons stated herein, the court **denies in part** and **grants in part** Defendant's Motion for Summary Judgment.  Plaintiff has raised a genuine issue of material fact with respect to her retaliation claims under Title VII and the TCHRA.  The court therefore **denies** Defendant's

Motion for Summary Judgment as to these claims.  Plaintiff has failed to raise a genuine issue of material fact with respect to her remaining Title VII claims, her ADEA claims, and her remaining TCHRA claims.  Defendant is therefore entitled to judgment as a matter of law on all remaining claims, and they are **dismissed with prejudice**.  At this juncture, Plaintiff's Title VII and TCHRA retaliation claims remain for trial.  The court will set the remaining claims for trial by separate order.

**It is so ordered** this 26th day of March, 2007.

Sam A. Lindsay
United States District Judge